DECISION
This cause is before the Court for decision with respect to plaintiff's prayer for preliminary injunctive relief. Plaintiff, Warwick Lodge No. 7, Fraternal Order of Police (hereinafter referred to as the Union), is a labor organization and is the bargaining representative for all permanent and probationary members of Defendant City of Warwick's police department other than certain commanding officers. Defendant, Board of Public Safety, was created pursuant to the Charter of the City of Warwick and is vested with general supervisory authority over the chief of police and members of the police department. Defendant, William E. Defeo, is the Chief of Police of the Warwick Police Department.
On or about July 1, 1993, the Union and the City entered into a collective bargaining agreement which inter alia provides in Section 18E:
 "No member shall be eligible for sick and/or injury pay unless said member executes a release submitted by the City authorizing the City to obtain any and all medical information from the member's treating physician and any other health care provider . . . rendering treatment to the member for the sickness or injury causing the member's inability to perform his/her duties . . . The medical information shall not be released to any person or agent, other than the Department, without the expressed written consent of the affected member."
On December 28, 1995, Defeo submitted to Officer Kenahan, a member of the Union, a medical release form (hereinafter referred to as the Medical Release, a copy of which is appended to Plaintiff's Complaint as Exhibit A) seeking certain information relative to a non-job related injury. The officer refused to sign the Medical Release as presented. This proceeding ultimately ensued.
Here, the major contention is that the Medical Release as presented (and which is in regular use by the Warwick Police Department) is violative of certain provisions of the Confidentiality of Health Care Information Act (hereinafter referred to as the Act). (R.I.G.L. § 5-37.3-1 et seq.). There is evidence before the Court that the Union and the City, for a substantial period of time, attempted to negotiate the language and terms of an appropriate medical release form to be used pursuant to the provisions of Section 18E of the collective bargaining agreement. There was further evidence that suggests that the parties were unable to agree on such a form and that unilaterally the City prepared and is using the Medical Release attached to the Complaint as aforesaid.
In addition to objecting to the relief sought by the Union, the City in the alternative has sought either to dismiss the instant proceeding pursuant to the provisions of Rule 12b of the Rules of Civil Procedure or to stay the proceedings pursuant to the provisions of R.I.G.L. § 28-9-4.
The Court first will deal with the alternative motions filed by the City.
It is clear, as maintained by the City, that the collective bargaining agreement has a lengthy and detailed grievance procedure included within its terms. Ultimately, grievances are to be resolved by arbitration. Ordinarily, under the provisions of § 28-9-1 et seq., access to this Court is precluded in connection with the arbitration of labor controversies, or any proceedings brought in this Court may be stayed under the provisions of § 28-9-4 pending arbitration of an arbitrable issue. The preclusion above referred to is an effective preclusion subject only to the provisions found elsewhere in the arbitration of labor controversies chapter dealing with actions in this Court. In the case at bar, however, it is alleged that the Medical Release and the actions of the defendants in the complaint complained of are violative of a strong public policy articulated by our General Assembly. That public policy basically is set forth in § 5-37.3-2 of the Act which reads as follows:
 "The purpose of this chapter is to establish safeguards for maintaining the integrity of confidential health care information that relates to an individual."
The policy further is manifest through the provisions of §5-37.3-10 which essentially declares any contract or agreement purporting to waive rights inherent in the Act to be null and void as against public policy.
As a threshold issue this Court believes that when confronted with claims of the significance of those hereinbefore referred to, it has a duty to adjudicate such claims (if they are not frivolously asserted) and to make a threshold determination with respect to possible illegality. These are matters for the Court and not for an arbitrator to decide. Accordingly, because this Court believes these matters were not frivolously asserted it hereby denies defendants' motion to dismiss pursuant to the provisions of R.C.P. 12(b) or, in the alternative, to stay these proceedings pursuant to § 28-9-4 of the R.I.G.L.
Turning now to the merits of the instant controversy. At this juncture, the matter is before the Court with respect to plaintiff's request for the issuance of a preliminary injunction. Our Supreme Court has held that the criteria for the issuance of such an order is the same as the criteria for the issuance of a temporary restraining order. That is to say, the plaintiff must establish (a) there is a likelihood of success on the merits, (b) sufficient irreparable harm as a result of the matter complained of, (c) an inadequate remedy at law, and (d) harm to the plaintiff outweighing any harm to defendants or to the public.City of Woonsocket v. Forte Brothers, Inc., 642 A.2d 1158, 1159 (R.I. 1994).
This Court's review of the release and of the acts complained of disclose three (3) areas of concern. First, the failure to provide Officer Kenahan with a copy of the Medical Release under the circumstances mandated in 5-37.3-4(a) is clearly violative of the Act. Defendants do not even question this basic right afforded by the Act and do not contest their failure to comply.[1] Second, the Medical Release in the notice provision contains language which requires that the costs incurred with respect to treatment be disclosed to the third person recipient. The form before the Court limited the information sought to: "any and all medical information relating to the injury causing my inability to perform my duties." Inferentially, the medical information sought (as opposed to the costs incident thereto) indeed is needed by the employer (the police department) for consideration of plaintiff's members' medical fitness to perform their duties. This Court, however, fails to see at this juncture any need for the cost information sought, particularly as it relates to non-job related injuries causing the inability to perform official duties. Third, and perhaps most significantly, plaintiff claims that the body of recipients under the Medical Release "my employer, Board of Public Safety, Warwick Police Department . . . its agents and employees[2] . . ." is so broad and so all encompassing as to make nugatory the final sentence of the release part of the form which reads:
 "I further direct you not to give, sell, transfer or in any way relay such information to anyone other than my said employer without first obtaining my additional written consent, therefore, on a form stating the need for the purposed use of such information and the need for its transfer to another person."
Plaintiff argues that the identification of the employer as herein-above set forth authorizes
 " . . . the release of the officer's confidential health care information . . . to numerous persons and entities."
Plaintiff further argues that that identification thus authorizes dissemination of such confidential health care information to persons who did not have a "need to know" though generally falling within the category "Board of Public Safety, Warwick Police Department its agents and employees."
Basically, plaintiff argues that if employer were General Motors rather than the Warwick Police Department utilization of this form would authorize dissemination of the confidential health care information to any and all of its thousands of employees and agents. This Court believes that plaintiff's argument is well-founded. This Court will not, at this juncture, rewrite the Medical Release but believes that under the circumstances of this case it easily can be tailored so as to obviate the problem called to the Court's attention by plaintiff.
Predicated upon all of the above the Court believes that plaintiff has in fact demonstrated a likelihood of success on the merits.
The very violation of the Health Care Information Act, in and of itself, creates the likelihood of irreparable harm and clearly (at least so far as this Court is concerned) there is no adequate remedy at law. Suit for damages with respect to the wrongful dissemination of information of the nature herein referred to is, to use a cliche, closing the barn door after the horse has escaped. Finally, the Court previously has noted the strong public policy articulated by our General Assembly. That policy demonstrates to this Court that plaintiff's members would suffer harm to a much greater extent by reason of the Court's failure to grant injunctive relief than would befall the defendants by the granting of such relief. Basically the only harm caused to defendants under the attendant circumstances is the requirement that they redraft in accordance with the provisions of §5-37.3-1 et seq. an appropriate Medical Release.
Based upon all the foregoing, plaintiff's request for preliminary injunctive relief is granted.
Counsel for the prevailing party shall prepare and present an appropriate Order which will be entered upon notice to defendants' counsel.
[1] Basically this matter is so obvious that it was not even briefed.
[2] The Medical Release contains an apparent typographical error by referring to " . . . Warwick Police Department . . . its agents and employers." The word "employees" clearly was intended rather than "employers".